UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DR. JACK WILSON STAMPS JR.,**

  *Plaintiff*,

v.                                  Case No.  SA-23-CV-01520-JKP

**UNIVERSITY OF TEXAS SYSTEM, UNIVERSITY OF TEXAS AT AUSTIN, DOREEN LORENZO,** ASSISTANT DEAN OF THE COLLEGE OF FINE ARTS AND DIRECTOR OF THE SCHOOL OF DESIGN AND CREATIVE TECHNOLOGIES, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES**; DOUGLAS DEMPSTER,** FORMER DEAN OF COFA AND CURRENT PROFESSOR AT UT AUSTIN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITES**; MICHAEL BAKER,** CHAIR OF THE DEPARTMENT OF ARTS AND ENTERTAINMENT TECHNOLOGIES AT UT AUSTIN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES**; AND DAVID COHEN,**

  *Defendants*.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. *ECF No. 25*. Plaintiff Jack Stamps responded. *ECF No. 27*. Upon consideration, the Motion is GRANTED.

**Undisputed Factual Background**

Stamps was a professor of music technology at UT Austin, and subsequently sued UT Austin and several employees following his termination in Spring 2019. *ECF No. 23, pg. 4, ¶¶1-4*. That lawsuit, filed in the Western District of Texas, Austin Division, resulted in a settlement agreement ("Settlement Agreement") in June 2023 which terminated the case: *Jack W. Stamps v. University of Texas at Austin, Doreen Lorenzo, Jay Hartzell, Michael Baker, Bruce Pennycock, Doug Dempster*, No. 1:20-cv-01204-LY-SH, ECF Nos. 71-74.

Stamps filed this case on December 12, 2023. *ECF No. 1*. In his Third Amended Complaint in this case, Stamps alleges that subsequent to entering the Settlement Agreement and termination of the Austin lawsuit, he made an open records request to UT Austin and received documents showing he was the subject of an investigation of the Behavioral Risk Assessment Committee ("BRAC") during his employment. *ECF No. 23, pg. 5, ¶11*. Stamps alleges the BRAC is a secretive committee that investigates and assesses employees "without consent or notification." *Id. at pg. 6, ¶14*. Stamps alleges the documents he received relating to the BRAC's investigation include defamatory statements about him made by administrators in UT Austin's College of Fine Arts ("COFA"). *Id. at pg. 6, ¶15*. Stamps alleges Defendants Dempster, Lorenzo, Cohen, and Baker made "libelous, defamatory, and offensive statements" about him during the BRAC investigation, which included: Cohen accused Stamps of defamation, discrimination, and victimization; Cohen blocked Stamps from social media, stating he used "the same tactics [he] would take with a stalker"; Cohen accused Stamps of "targeting" and claimed Stamps put Cohen's family's safety "at risk"; Dempster referred to Stamps as a person capable of accusing another of "…running a pedophile ring in the basement of a pizza parlor"; Dempster referred to Stamps as having a "…conspiracy-addled mind..."; UT Austin Police Department defamed Stamps by re-

ferring to him as "very combative and confrontational", as well as describing him as "getting fed up", stating that he might "go nuclear," and he is "conspiratorial." *Id. at pg. 6-7, ¶17, 22; pg. 8, ¶28; pg. 12, ¶¶51-52*.

Stamps does not allege Lorenzo or Baker made any specific defamatory statements about him during the BRAC investigation, but instead makes a broad claim that "COFA administrators, in coordination with members of the BRAC, trumped up defamatory and offensive claims about [him]." *ECF No. 23, pg. 5, ¶10*. Stamps alleges Lorenzo and Baker "encouraged and orchestrated the Cohen complaint and as such… also defamed [him] for the purposes of making sure [he] would never teach at UT Austin again." *ECF No. 23, pg. 7, ¶21*.

Based upon these factual allegations, Stamps asserts Defendants violated his due process rights protected by 42 U.S.C. § 1983 because the BRAC investigated him without his knowledge. *Id. at pg. 6 ¶14*. Stamps contends he had a right to a "fair and transparent process regarding UT Austin's continuing investigation and assessment of [him], [his] character, and [his] psychological and medical states by the BRAC." *Id. at pg. 11, ¶45*. Stamps also contends he was entitled to a Loudermill hearing to "address the materials found in the BRAC's investigation of [him] and the resulting deprivation of [his] UT Austin employment and potential employment property interest." *Id. at pg. 12, ¶49*. Stamps also asserts a cause of action for violation of 28 U.S.C. § 4101 based upon the defamatory and libelous statements made during the BRAC investigation. *Id*.

Defendants now file this Motion to Dismiss on several bases: sovereign immunity; § 4101 does not provide for a private cause of action; failure to state a viable cause of action of defamation; defamation claim against Lorenzo, Dempster, Baker, and Cohen must be dismissed under the election of remedies provision in Texas Civil Practice and Remedies Code §

101.106(e); all claims are barred by the Settlement Agreement; and Defendant UT System is not a proper party to this suit.

## Legal Standard

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Federal Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## Discussion

**(1) Release of Claims in Previous Settlement Agreement**

Defendants contend they are entitled to dismissal of this suit under Federal Rule 12(b)(6) based upon the terms of release contained in their Settlement Agreement executed in the previous case. Defendants argue the basis of this litigation arises out of Stamps' employment with UT Austin, and he released all such claims in the Settlement Agreement.

Stamps responds that he was not in a proper emotional or financial position to knowingly enter into the Settlement Agreement. Stamps asserts UT was in a superior position because the employees involved in that suit knew of the ongoing BRAC investigation of Stamps but did not tell him. Stamps contends he could not have knowingly entered into the Settlement Agreement and would not have entered it had he known of the BRAC investigation. *ECF No. 27, pp. 14-16*.

In his Third Amended Complaint, Stamps admits he filed a previous federal lawsuit against UT Austin and all individual employees in this lawsuit except David Cohen based upon complaints arising in and from his employment with UT Austin: *Jack W. Stamps v. The University of Texas at Austin, et al.*, Civil Action No. 1:20-CV-01204-LY. It is undisputed Magistrate Judge Dustin Howell mediated this previous suit, and two months later, the parties entered a Settlement Agreement which terminated the case. *ECF No. 23, pg. 4, ¶4*; *Stamps v. University of Texas at Austin, et al.,* No. 1:20-cv-01204-LY-SH, ECF Nos. 71-74. Also in his Third Amended Complaint, Stamps states the causes of action asserted in this lawsuit arise from the defamatory statements made during the BRAC investigation, the due process violations, and the deprivation of a Loudermill hearing. Stamps asserts he seeks to "address the materials found in the BRAC's investigation of [him]" which resulted in "deprivation of [his] UT Austin employment and poten-

5

tial employment property interest." *ECF No. 23, pg. 12, ¶49*. Stamps also asserts a cause of action for violation of 28 U.S.C. § 4101 based upon the defamatory and libelous statements made during the BRAC investigation.

Because Stamps references the Settlement Agreement in his Complaint, and it is necessary to determine the viability of the causes of action asserted, Defendants attached it to the Motion to Dismiss, and this Court may examine it. *See Brand Coupon Network,* 748 F.3d at 635. In this Settlement Agreement, Stamps and Defendant UT Austin agreed to "fully and finally resolve all disputes between them." *ECF No. 25, Exh. A, pg. 1*. Specifically, the Settlement Agreement states:

> The Parties mutually release each other from all Claims and Damages arising from Stamps' employment with UT Austin or any actions or inactions by UT existing as of the Effective Date. This includes but is not limited to, Stamps releasing UT and its employees from all Claims and Damages that have been, could have been, may be, or could be alleged or asserted now by Stamps against UT. . . . The Parties intend this release to be full and final mutual releases of Claims and Damages for matters accrued through the Effective Date.

*Id. at Exh. A, pg. 4*. In the Settlement Agreement "UT" is defined as "The University of Texas at Austin; The University of Texas System; the Board of Regents of The University of Texas System; and each of the aforementioned entities' affiliated representatives, officers or directors, employees, agents, principals, insurers, and attorneys." *Exh. A, pg. 2*. "Claims" is defined as:

> all theories of liability or recovery of whatever nature, whether known or unknown, that were or could have been the subject of any complaint or charge filed or proceeding initiated with any court or other governmental agency or body of the United States of America or any other country, or any state or local jurisdiction within the United States of America or any other country, or of any lawsuit or similar proceeding and which relate to or arise from Stamps' employment with UT Austin or any actions or inactions by UT Austin, as of the Effective Date, whether known or unknown to Stamps at the time of execution of this Agreement.

*ECF No. 25, Exh. A, pg. 2*.

6

"[S]ettlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986); *HHS Exceptional Hosp., LLC v. HGMB, LLC*, No. A-21-CV-865, 2022 WL 21756563, at *3 (W.D. Tex. July 1, 2022), report and recommendation adopted, 2022 WL 21756564 (W.D. Tex. July 28, 2022). A district court may enforce a settlement agreement, including enforcement by granting a motion to dismiss under Federal Rule 12(b)(6), when a plaintiff seeks relief on a claim fully and finally released within it. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *HHS Exceptional Hospitality,* 2022 WL 21756563, at *3-4; *Shepherd v. Wells Fargo Bank*, No. 1:15-CV-358, 2016 WL 4435267, at *2 (W.D. Tex. Aug. 19, 2016).

Based upon this guidance, in analyzing this Motion to Dismiss, this Court must determine: (1) whether the Settlement Agreement was valid and enforceable, and (2) whether the Settlement Agreement, and the releases therein, encompass the causes of action asserted in this case.

**(1) Was the Settlement Agreement Valid and Enforceable**

To begin, Stamps admits in the Third Amended Complaint he entered the Settlement Agreement and does not allege or present any direct or specific argument that it is not valid or enforceable. Instead, Stamps contends he "would not have signed the Release Agreement… had [he] known that a secretive committee at UT Austin was violating [his] right to due process… while collating manufactured defamatory statements" about him. *ECF No. 23, pg. 4-5, ¶5*. Because Stamps proceeds pro se, the Court will liberally construe this argument to mean the Settlement Agreement was not valid and enforceable because he did not know of the existing causes of action he could have raised in the previous lawsuit.

It is undisputed Stamps entered the Settlement Agreement during litigation and while represented by counsel. The case was mediated by a federal Magistrate Judge, and the parties entered the Settlement Agreement shortly after the mediation while Stamps was represented by counsel. Given these circumstances in which he entered the Settlement Agreement, the Court concludes Stamps entered it knowingly and was well informed of the release agreement and scope of the release within.

Settlement Agreements and Release Agreements are contracts, and their construction is governed by legal principles applicable to contracts generally, pursuant to applicable state law. *Armstrong v. Curves Int'l, Inc.*, No. 6:15-CV-294-RP, 2017 WL 894437, at *9 (W.D. Tex. Mar. 6, 2017); *In re U.S. Brass Corp.*, 277 B.R. 326, 329 (Bankr. E.D. Tex. 2002); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). If a Settlement or Release Agreement is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

"A release of a claim or cause of action extinguishes the claim or cause of action." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). "To effectively release a claim, the releasing instrument must 'mention' the claim to be released; ... [a]ny claims not 'clearly within the subject matter' of the release are not discharged, even if those claims exist when the release is executed." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991)). "It is not necessary, however, for the parties to anticipate and identify every potential cause of action relating to the subject matter of the release." *Id.*; *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). "Although re-

8

leases often consider claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future." *Keck, Mahin & Cate*, 20 S.W.3d at 698.

The Settlement Agreement states: "[t]he Parties mutually release each other from all Claims and Damages *arising from Stamps' employment with UT Austin* or any actions or inactions by UT *existing as of the Effective Date*." ECF No. 25, Exh. A pg. 4 (emphasis added). The release includes all claims "that have been, *could have been, may be, or could be alleged* or asserted now by Stamps against UT." *Id.* (emphasis added). Finally, the definition of "claim" encompasses all theories of liability "*whether known or unknown*" that could have been the subject of any complaint, charge, or lawsuit "which relate to or arise from Stamps' employment with UT Austin or any actions or inactions by UT Austin, *as of the Effective Date, whether known or unknown* to Stamps at the time of execution of this Agreement." ECF No. 25, Exh. A pg. 2 (emphasis added).

Although Stamps' argument does not insinuate the language itself is ambiguous, the Court finds it is so worded that it can be given a certain or definite legal meaning or interpretation. Based upon review of this clear and unambiguous release language, to which Stamps knowingly agreed, the Court concludes the release of claims is valid and enforceable.

**(2) Whether the Settlement Agreement Released the Causes of Action Asserted Here**

By Stamps's own admission, his causes of action in this lawsuit arise out of his employment with UT Austin, and thus, must have occurred and existed prior to the previous lawsuit and prior to the effective date of the Settlement Agreement. Therefore, the release in the Settlement Agreement encompasses these causes of action asserted in this litigation. Although Stamps contends he did not discover these due-process causes of action until after he entered the Settlement Agreement, he still released them by expressly releasing all claims that "*could have been, may*

9

*be, or could be alleged* or asserted now by Stamps against UT" and by releasing all theories of liability "*whether known or unknown*" "which relate to or arise from Stamps' employment with UT Austin or any actions or inactions by UT Austin, *as of the Effective Date, whether known or unknown* to Stamps at the time of execution of this Agreement." ECF No. 25, Exh. A pg. 2,4 (emphasis added). Further, the Settlement Agreement's definition of the party "UT" encompasses all named Defendants in this matter, that is, the University of Texas at Austin, the University of Texas System, and all affiliated representatives and employees. *Id. at pg. 2*.

Based upon this clear language, the Court concludes the release with the Settlement Agreement is valid and enforceable and encompassed the causes of action asserted in this lawsuit, although unknown at the time. *See Keck, Mahin & Cate*, 20 S.W.3d at 698. Therefore, Stamps' causes of action asserted in this suit are barred by the Settlement Agreement and may be dismissed under Federal Rule 12(b)(6) for failure to state a claim. *HHS Exceptional Hospitality,* 2022 WL 21756563, at *3-4; *Shepherd v. Wells Fargo Bank*, No. 1:15-CV-358, 2016 WL 4435267, at *2*HHS*.

Based upon this conclusion, the Court does not reach Defendants' other arguments for dismissal of the due process causes of action. Further, based upon these findings and conclusions, the Court will not provide Stamps an opportunity to amend his Complaint. *See Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977). Controlling authority and Stamps' allegations reveal he cannot state a plausible cause of action. Therefore, amendment would be futile. In addition, this Court provided Stamps several opportunities to amend his Complaint prior to the filing of this Motion to Dismiss to correct the presented deficiencies, and he did file this, the Third Amended Complaint. *See id.; Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014).

**Conclusion**

For the reasons given, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim filed pursuant to Federal Rule 12(b)(6).

Any pending motions are dismissed as moot.

The Court's referral of all pretrial matters to Magistrate Judge Chestney is withdrawn.

The Clerk of Court is DIRECTED to close the case. The Court will issue Final Judgment separately.

Further, the Court **WARNS** Plaintiff Jack Stamps that should he persist in filing cases with causes of action arising from his employment with UT Austin and barred by the parties' Settlement Agreement, **the Court may declare him to be a vexatious litigant and may impose other appropriate sanctions, such as payment of attorney fees**. *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187-192 (5th Cir. 2008).

It is so ORDERED.
SIGNED this 15th day of May, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE